IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**PAMELA BARTLEY**, )
      Plaintiff, )
)
      v. )    2:07cv1025
)    **Electronic Filing**
**COMMISSIONER OF SOCIAL** )
**SECURITY,** )
      Defendant. )

## MEMORANDUM OPINION

December 11, 2008

### I.    INTRODUCTION

Plaintiff Pamela Bartley brought this action pursuant to 42 U.S.C. § 405(g) and 1383 (c)(3), for review of the final determination of the Commissioner of Social Security ("Commissioner") denying her application pursuant to the Social Security Act ("Act") for Disability Insurance Benefits ("DIB") and Supplemental Security Income (SSI) under titles II and XVI of the Social Security Act (Act), 42 U.S.C. §§ 401-433, 1381-1381f. As is the customary practice in the Western District of Pennsylvania, the parties have submitted cross-motions for summary judgment and the record developed at the administrative proceedings.

After careful consideration of the decision of the Administrative Law Judge ("ALJ"), the briefs and reply briefs of the parties, and the entire record, the Court finds that the decision of the Commissioner is supported by substantial evidence and therefore will deny Plaintiff's motion for summary judgment and grant Defendant's motion for summary judgment.

### II.    PROCEDURAL HISTORY

Plaintiff protectively filed for DIB in May 13, 2005, and for SSI in June 6, 2005, alleging disability as of December 23, 2004, due to back injury, rheumatoid arthritis, numbness, chronic fatigue, thoracic and lumbar subluxation, peptic ulcer, depression, and anxiety. (R. 18, 93, 573, 587). The state agency denied her claim on August 18, 2005. (R. 581-86). Plaintiff then requested a hearing and a hearing was held before ALJ Raymond J. Zadzilko on July 19, 2006, during which Plaintiff, who was represented by counsel, and an impartial vocational expert

testified. (R. 591-624). On September 22, 2006, the ALJ issued a decision finding that Plaintiff was not disabled. (R. 15-31). On May 23, 2007, the Appeals Council denied Plaintiff's request for review (R. 6-10), and the ALJ's decision became the final decision of the Commissioner.

Plaintiff then filed her complaint and appeal in this Court on July 25, 2007. On February 26, 2008, Plaintiff filed a motion for summary judgment. On April 15, 2008, Defendant filed a motion for summary judgment.

### III. STATEMENT OF THE CASE

Plaintiff concedes that the ALJ's findings with respect to her physical impairments are supported by substantial evidence. Therefore, the statement of the case set forth here will deal only with Plaintiff's mental health impairments. On June 26, 2004, Plaintiff slipped and fell while working as a nurses aide and injured her shoulders, back, head, and neck. (R. 83, 566, 602-3). She continued to work until December 23, 2004, when she claimed her disability began. (R.68, 83, 566, 598-9, 602).

On February 3, 2005, Dr. Hong Shi, M.D., Ph.D., a psychiatrist, reported that Plaintiff had a history of depression. (R.252). On June 6, 2005, a claims representative of the SSA reported that Plaintiff was neat, clean, cooperative, and talkative, and had no difficulty concentrating, reading, understanding, writing, talking, answering, or communicating coherently during the interview (R. 94-5). On the same day, Plaintiff filled out a questionnaire and reported that she provided care to her children, grandchildren, and mother by driving them to stores, the pharmacy, friends' houses, school, and doctors; lived in an apartment with a male friend or with her mother; occasionally cooked, performed some housework with breaks, went grocery shopping, and cleaned the house with breaks; did not require assistance with personal care or reminders about personal needs; was not dependent on others for care; did not have problems getting along with family, friends, and neighbors; responded well to criticism; got along well with people of authority; plan her days; was able to make her own decisions; start and complete projects; did not have problems understanding and carrying out instructions or making decisions; and did not need help taking her medications. (R.101-60).

2

On June 14, 2005, Plaintiff's psychologist, Dr. Phyllis R. Brentzel, Psy. D., completed a questionnaire and medical source statement. (R.352-58). Brentzel indicated that she saw plaintiff weekly for major depressive disorder and posttraumatic stress disorder. (R.352). Plaintiff's speech was described as rapid, loud, and pressured and her mood was described as most often sad and frustrated. (R.353). Plaintiff was described as being appropriate and oriented to time, place, and person. *Id.* Brentzel reported that Plaintiff had missed appointments because she couldn't keep track of what day it was, but could keep herself on task and focused through the use of calendars, lists, and phone reminders *Id.* She also reported that Plaintiff had expressed suicidal thoughts, but denied that she would ever attempt suicide. *Id.* She also reported that Plaintiff sometimes had panic attacks in public. (R. 354). Brentzel reported that Plaintiff knows how to behave socially and is capable of managing benefits on her own behalf. *Id.* Further, Brentzel opined that Plaintiff's mental condition affected her ability to maintain concentration, persistence, or pace because, as her anxiety increased, she experienced difficulties remaining on task, staying focused, and maintaining motivation. (R. 355).

In her medical source statement, Brentzel noted that Plaintiff had marked limitations in remembering, understanding and carrying out detailed instructions. She also noted that Plaintiff had moderate limitations in understanding, remembering and carrying out short, simple instructions, and making judgments on simple work-related decisions. (R. 357). Brentzel also reported that Plaintiff was only slightly limited in her ability to interact appropriately with the public, with supervisors and co-workers, respond appropriately to work pressures in a usual work setting, and to respond appropriately to charges in a routine work setting. *Id.*

During evaluations by Dr. Shi in July 2005 and August 2005, Shi reported that Plaintiff was alert and oriented, and her mood was "fine." (R. 384, 390). On August 11, 2005, Dr. Susan Baxter Tarter, Ph.D., a state agency psychological consultant, reviewed plaintiff's records and concluded the Plaintiff suffered from major depressive disorder, PTSD, and a history of alcohol abuse. (R. 359-69). Tarter concluded that these issues resulted in mild restrictions in Plaintiff's activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, and pace, and no episodes of decompensation. (R.

3

369). With regard to Plaintiff's mental residual functional capacity, Tartar found that Plaintiff had mild restrictions in her ability to carry out detailed instructions and in the ability to maintain attention and concentration for extended periods of time. (R. 372-73). She found that Plaintiff was not significantly limited in any other category. (R. 372-73). During follow-up visits with Dr. Shi in November 2005 and February 2006, it was reported that Plaintiff's mood was "fine," and that she was alert and oriented. (R. 386, 399).

On April 30, 2006, Dr. Brentzel completed a second medical source statement. (R. 415-17). Brentzel noted that Plaintiff had slight restrictions in her ability to understand and remember, short simple instructions; carry out short simple instructions, and make judgements on simple work-related decisions. (R. 416). Brentzel further reported that Plaintiff had moderate difficulty in her ability to understand, remember and carry out detailed instructions; interact appropriately with the public supervisors, and co-workers; and respond appropriately to changes in a routine work setting. *Id.* Finally, Brentzel reported that Plaintiff had marked limitations in her ability to respond appropriately to work pressures in a usual work setting. *Id.* Dr. Brentzel wrote a letter to accompany her assessment. (R. 418-19). (R.116-123.). Brentzel wrote "If an employer would hire her, her bouts with depression and taking care of her chaotic family are likely to interfere with arriving at work on time or even getting to work at all. Her unruly temper could easily offend customers and could be a factor in her ability to maintain employment." (R. 419).

On May 22, 2006, Joel Last, M.D., a psychiatrist, drafted a letter to Plaintiff's attorney stating that he had treated Plaintiff on four occasions. (R. 543-45). During these visits, Plaintiff reported a history of depression, anxiety, and past alcohol abuse. (R. 543). On January 10, 2006, Plaintiff indicated that she had been looking for a job, but had not found one. (R. 544). She further reported that she was haunted by her father's suicide. *Id.* On March 21, 2006, Dr. Last prescribed Lexapro, Xanax, Neurontin, and Klonopin. *Id.* On May 2, 2006, Plaintiff reported to Last that she was on welfare, was unable to obtain a job, and was denying suicidal ideation. *Id.* Dr. Last diagnosed Plaintiff with major depression, chronic, moderate and PTSD. (R. 545). He further opined that Plaintiff had a current GAF score of 45 and a highest GAF score of the past

4

year of 55. *Id.* A letter was written to Plaintiff's counsel on July 27, 2005, by Dr. Brentzel discussing how Plaintiff fit 6 of 9 criteria for a Borderline Personality Disorder. (R.571-2).

At the hearing, Plaintiff testified that she was born on June 19, 1961, (R. 596), that she was a high school graduate and went to bartending school (R. 597), and that she was employed in the past as a nurse's aid, waitress, daycare worker, cashier, and stocker. (R.600-02). Plaintiff testified that she experiences mood swings, yells at people, and does not like to leave her house unless necessary. (R. 605, 612-13). She further testified that she lived with a male roommate, had no problems caring for her personal needs and grooming; performed some shopping, dusting, laundry folding, and light housework; drove; went to doctors' appointments; visited her children; read; and watched TV (R. 596-97, 611-14).

The ALJ concluded that:

1. The claimant meets the non-disability requirements for a period of disability and disability insurance benefits set forth in section 216(I) of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since allegedly becoming disabled on December 23, 2004. (20 CFR §§ 404.1520 (b) and 416.920 (b)).

3. The claimant has the following severe impairments: osteoarthritis/fibromyalgia, major depressive disorder, post-traumatic stress disorder, and borderline personality disorder. (20 CFR §§ 404.1520(c) and 416.920 (c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals any of the criteria in Listings 1.00 or 12.00 or any other listed impairment set forth in 20 CFR 404, Subpart P, Appendix 1, Regulation No. 4 (20 CFR §§ 404.1520(d) and 416.920(d)).

5. Upon careful consideration of the entire record, the undersigned finds that claimant has the residual functional capacity to perform simple, routine and low-stress work at the light exertional level that does not involve deadlines or fast-paced production.

6. The claimant is unable to perform any past relevant work. (20 CFR §§ 404.1565 and 416.965).

7. The claimant was born on June 23, 1961 and was 43 years old when she allegedly became disabled and is currently 45 years old, a "younger individual" as defined in the Regulations (20 CFR §§ 404.1563 and 416.963.)

8. The claimant is a high school graduate (Exhibit 1E; Testimony; 20 CFR §§ 404.1564 and 416.964).

9. The claimant has semiskilled work experience but has not acquired any skills transferable to work with the above-stated residual functional capacity (Exhibits 1E and 6E; Testimony; 20 CFR §§ 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, jobs exist in significant number in the national economy (sic) that the plaintiff can perform. (20 CFR §§404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a "disability," as defined in the Social Security Act, from December 23, 2004 through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

(R. 20-30).

## IV. STANDARDS OF REVIEW

The standard of review in a social security case is whether substantial evidence exists in the record to support the Commissioner's opinion. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Additionally, if the Commissioner's findings of fact are supported by substantial evidence, they must be accepted as conclusive. 42 U.S.C. 405 (g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). In making this determination, the district court considers and reviews only those findings upon which the ALJ based the decision, and cannot rectify errors, omissions or gaps therein by supplying additional facts from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. Fargnoli v. Massarini, 247 F.3d 34, 44 n.7 (3d Cir. 2001).

When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to DIB benefits, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. § 404.1520. The Supreme Court summarized this five step process:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical

6

or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920 (f), 416.960(c).

Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (footnotes omitted).

## IV.  DISCUSSION

In this case, the ALJ stopped his review of the claim at the fifth step, upon concluding that Plaintiff could perform jobs that exist in a significant number in the national economy. Plaintiff makes challenges to the ALJ's determination of Plaintiff's mental residual functional capacity and the question posed to the vocational expert based upon that determination. Specifically, she contends that the ALJ did not adequately address Plaintiff's difficulty with concentration and attention to tasks on a consistent basis and her difficulty with interpersonal relationships. Plaintiff further claims that the ALJ makes no reference in his hypothetical to any difficulty on the part of Plaintiff with regard to maintaining appropriate social relationships such as those that would be required with the public/customer, supervisors, and/or coworkers.

"'Residual Functional Capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Hartranft v. Apfel, 181 F.3d 358, 359 n.1 (3d Cir. 1999); 20 C.F.R. §§ 404.1545 (a), 416.945 (a). An ALJ making a residual functional capacity determination must "consider all evidence before him [.]" Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir.2000). "That evidence includes medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others. Fargnoli v. Massanari, 247 F.3d 34, 41 (3d. Cir.2001); *see* 20 C.F.R. § 404.1545(a). In construing the evidence, the "ALJ may weigh the credibility of the evidence, [however,] he must give some

7

indication of the evidence which he rejects and his reason(s) for discounting such evidence." Burnett, 220 F.3d at 121; see Cotter v. Harris, 642 F.2d 700, 704 (3d Cir.1981) (The ALJ's determination of residual functional capacity must "be accompanied by a clear and satisfactory explication of the basis on which it rests.")

In the instant determination of Plaintiff's residual functional capacity, the ALJ properly indicated the evidence he rejected and his rationale for determining that Plaintiff can perform work at the light exertional level. The light work category is described in the regulations as follows:

> (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm and leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R.§ 404.1567.

Plaintiff does not contest that the ALJ's conclusions about her physical ailments were supported by substantial evidence. However, Plaintiff contends that she has significant difficulty with concentration and attention to tasks on a consistent basis, a fact she claims was ignored by the ALJ. Plaintiff ignores the ALJ's discussion of the evidence in which Plaintiff reported in 2005 that she was capable of making decisions on her own, was able to complete projects and activities, and did not have trouble understanding or carrying out instructions. (R. 24, 101-06). The ALJ acknowledged Dr. Brentzel's opinion that Plaintiff was confused and had missed appointments at times and needed reminders. However, he also noted that Plaintiff had been oriented in all spheres, had fair to good recent memory, and had good remote memory and immediate retention and recall. (R. 24, 352-3). She also noted that Plaintiff had moderate restrictions understanding, remembering, and carrying out short, simple instructions. (R. 24,354).

The ALJ also gave some weight to the opinion of Dr. Tarter. Tarter concluded that Plaintiff's issues resulted in moderate difficulties in maintaining concentration, persistence, and pace. (R. 369).

In April, Brentzel reported that Plaintiff had moderate restrictions in understanding, remembering, and carrying out detailed instructions but only "mild" restrictions making judgments on simple work-related decisions and understanding and carrying out short, simple instructions. (R. 23-6, 416-17). Plaintiff's treating physicians stated that she was alert and oriented at her visits. (R. 384, 386, 390, 399). Further, Plaintiff did not testify to problems with this area of functioning. She indicated that she did some cooking, watched television, and read.(R. 596-97, 611-14). Plaintiff argues that all of this evidence taken together is insufficient to support the contention that she can work with proper concentration and attention on a consistent basis. She claims that the evidence ignores references in the record to her inability to concentrate. However, although Dr. Brentzel made statements that plaintiff experienced difficulties with concentration, the remaining record and many of Dr. Brentzel's findings contradict those assertions. Therefore, the ALJ was correct to give those statements less weight in his assessment of Plaintiff's residual functional capacity and to determine that Plaintiff had moderate restrictions in concentration and pace.

Plaintiff further argues that her inability to maintain normal social relationships was ignored when the ALJ determined her residual functional capacity. The ALJ determined that Plaintiff suffered only mild limitations in the area of social functioning. (R. 23). In 2005, Plaintiff reported that she did not have any problems getting along with her family, friends, and neighbors. (R. 23-4,101-06). She further reported that she got along well with people in authority, that she sometimes had panic attacks in public, but also drove her children and parents to stores, school, and the doctor. *Id.* In 2005, Brentzel reported that claimant was sad and frustrated, often speaking loudly. (R. 23-4, 352-3). However, Brentzel also reported that Plaintiff's behavior was always appropriate. *Id.* During the same period, Brentzel reported that Plaintiff was only slightly limited in her ability to interact appropriately with the public, interact appropriately with

9

supervisors and co-workers, respond appropriately to work pressures in a usual work setting, and respond appropriately to charges in a routine work setting. (R. 23-4, 357). The ALJ also gave some weight to the opinion of Dr. Tarter who concluded that Plaintiff's issues resulted in mild restrictions in Plaintiff maintaining social functioning. (R. 369).

No other medical providers reported difficulty with Plaintiff's ability to maintain appropriate social interactions. Plaintiff's psychiatrist reported on several occasions that Plaintiff's mood was fine. (R. 384, 386, 390, 399) Although claimant testified that she had mood swings, yelled at people, and did not like to leave her house unless necessary, she had reported that she got along well with family, friends, and neighbors and that she regularly left her house to drive her parents and children to appointments and stores. (R. 24, 101-06). In the final letter from Dr. Brentzel, the doctor indicates that Plaintiff would likely have difficulty finding work, in part, because of her mood swings. (R. 543-45). However, the ALJ properly discounted this opinion because it was not well documented by medically acceptable clinical and laboratory diagnostic techniques and was inconsistent with other substantial evidence of record as discussed above. (R. 26). The ALJ also properly discounted the GAF scoring of Dr. Last, which is reflective of serious symptoms, as Last did not provide findings from mental status exams to support his opinion; the opinion was not accompanied by progress notes; and the opinion was inconsistent with Plaintiff's self-reported activities. (R. 28). As a result, the ALJ's finding that Plaintiff had only mild limitations in the area of social functioning is not inconsistent with a residual functional capacity finding at the "light" exertional level.

Finally, Plaintiff argues that the ALJ's hypothetical to the vocational expert was insufficient as it did not include specific reference to Plaintiff's limitations in the areas of concentration, persistence, and social interactions. The "[t]estimony of vocational experts in disability determination proceedings typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert." Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). "The ALJ will normally ask the expert whether, given certain assumptions about a claimant's physical capability, the claimant can perform certain types of

jobs, and the extent to which such jobs exist in the national economy." *Id.* Although "the ALJ may proffer a variety of assumptions to the expert, the expert's testimony concerning alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." *Id.*; see also Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002). If a hypothetical question does not reflect all of a claimant's impairments that are supported by the record, "the question is deficient and the expert's answer to it cannot be considered substantial evidence." Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987); see also Ramirez v. Barnhart, 372 F.3d 546, 550 (3d Cir. 2004); *Burns*, 312 F.3d at 123.

In the instant case, the ALJ posed the following hypothetical question to the vocational expert during the administrative hearing:

> I'm going to ask you to consider this hypothetical, in summary with the claimant's age, education, training, and work experience, assuming maximum residual functional capacity of light, which includes sedentary, the work needs to be simple, routine, low stress in nature, which I would translate as meaning no deadlines or fast-paced production, assuming these limitations first of all, are there any of the claimant's prior jobs which could be done within those parameters?

(R. 619-20).

Plaintiff suggests that pursuant to Burns v. Barnhart, the hypothetical of the ALJ improperly denied benefits on a "boiled down, vague, description of the claimant's impairments when the record contained evidence of specific work-related limitations of function. In Burns, the ALJ's hypothetical to the vocational expert stated that plaintiff could perform "simple, repetitive one, two step tasks" in spite of Plaintiff's borderline intellectual functioning. Burns, 312 F.3d at 123. The Court held that:

> Here, the ALJ's hypothetical did not refer to any type of limitations later outlined in Dr. Laviolette's report. Instead, it merely referred to "simple, repetitive one, two step tasks." This phrase, however, does not specifically convey Burns' intellectual limitations referenced in Dr. Laviolette's report. Rather, it could refer to a host of physical and mental limitations, such as a person's mechanical or motor skills, his lack of initiative or creativity, or a fear of, or unwillingness to take on, unfamiliar tasks. While the phrase could encompass a lack of intelligence, it does not necessarily incorporate all of the borderline aspects of Burns' intellectual functioning or the other deficiencies in Dr. Laviolette's report. For

11

> example, it certainly does not incorporate Dr. Laviolette's finding that Burns' is borderline in the areas of reliability, common sense, ability to function independently, and judgment, or that he manifests flightiness, disassociation, oppositional tendencies, and difficulties in comprehension. As a result, the hypothetical did not include all of the limitations suffered by Burns, thus making it deficient.

*Id.*

It is well-established that the ALJ must incorporate a claimant's established limitations in his or her RFC determination and hypothetical question, and the ALJ in the instant case properly discounted or dealt with those specific limitations in his residual functional capacity evaluation. The ALJ determined that Plaintiff's alleged significant limitations in interacting with others were not credible and were not supported in the record. As discussed above, Plaintiff's self-reported abilities and medical findings did not support this limitation. Therefore, this specific limitation was properly excluded from the ALJ's hypothetical question to the vocational expert. Additionally, the ALJ properly dealt with his finding that Plaintiff had moderate issues with persistence, pace, and concentration by including that she was limited to simple, routine, low stress work with no deadlines and no fast-paced production. The ALJ did not find that the record supported that Plaintiff had such an extreme problem with concentration that she could not complete a work day and limitations in the fast-paced nature of the work for simple, routine, low stress work sufficiently encompasses her moderate limitations.

## V. CONCLUSION

Based on the foregoing, the motion for summary judgment filed by Defendant Commissioner of Social Security shall be granted. The motion for summary judgment filed by Plaintiff shall be denied. An appropriate order will follow.

s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc: Karl E. Osterhout, Esquire
1789 South Braddock Avenue
Suite 570
Pittsburgh, PA 15218

Jessica Lieber Smolar
Assistant United States Attorney